No. 102,468

In the Matter of the Care and Treatment of TIMOTHY J. BURCH.

(291 P.3d 78)

Opinion filed December 28, 2012.

W. *Fredrick Zimmerman*, of Kansas City, was on the brief for appellant.

*Robbin L. Wasson*, assistant district attorney, *Jerome Gorman*, district attorney, and *Steve Six*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

MORITZ, J.: This court granted Timothy Burch's petition for review of the Court of Appeals' decision affirming the district court's denial of his petition for release or discharge or transitional release pursuant to K.S.A. 2011 Supp. 59-29a08. Burch contends the district court erred in finding he failed to show probable cause that his mental abnormality had changed to the extent that he is safe to be placed in transitional release.

We conclude that we apply a de novo standard of review to the district court's denial of a petition for discharge or transitional release under K.S.A. 2011 Supp. 59-29a08. Further, we hold that the petitioner bears the burden of proof on such a petition and is entitled to have the facts viewed in a light most favorable to the petitioner. Finally, applying that de novo standard and considering the facts in a light most favorable to Burch, we conclude Burch

failed to establish the requisite probable cause entitling him to a full evidentiary hearing on his petition for discharge or transitional release under K.S.A. 2011 Supp. 59-29a08. Accordingly, we affirm the Court of Appeals' decision affirming the district court's probable cause determination.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1989, Burch was convicted of three counts of aggravated sodomy, five counts of indecent liberties with a child, and two counts of sexual exploitation of a child. In December 2001, while Burch was still imprisoned on these convictions, the State instituted proceedings against him under the Sexually Violent Predator Act (SVPA), K.S.A. 59-29a01 *et seq.*

Burch stipulated that he was, and the court found him to be, a sexually violent predator under the SVPA, and he began treatment at the Larned State Hospital in June 2002. As required by K.S.A. 2011 Supp. 59-29a08(a), a State physician reported annually on Burch's treatment progress. In each report, the physician opined that Burch remained a sexually violent predator.

In November 2005, Burch filed a petition for discharge or transitional release in the district court requesting appointment of, and evaluation by, an independent expert. The district court appointed an expert, Steven E. Peterson, M.D., who met with Burch and prepared a psychological report.

The Court of Appeals panel summarized the State physician's annual reports from 2005 to 2008 and Dr. Peterson's report as follows:

"In 2005, 2006, and 2007, Dr. Austin T. DesLauriers, clinical director of the Sexual Predator Treatment Program (SPTP), provided written reports authored by Dr. Mayda Nel Strong to the Secretary of SRS concerning Burch's mental condition in accordance with the annual review procedures. In 2005, Strong suggested that Burch's future progress would depend on his motivation and stated that Burch was maintaining his stage three status in the seven stage rehabilitation program. In 2006, Strong opined that Burch had made remarkable progress and had moved from stage three to stage four. Subsequently, Burch was approved for stage five because of further progress. In 2007, Strong opined that Burch's progress over the preceding year was mixed and that the SPTP staff feedback reflected his up and down progress. Strong concluded at the end of each evaluation from 2005 through 2007 that Burch remained a sexually violent predator who

suffered from a mental abnormality making him likely to engage in further acts of sexual violence, and his mental abnormality had not changed to such an extent that it would be safe to place him in transitional release.

"The 2008 annual report was completed by DesLauriers, who had treated Burch since 2002. DesLauriers noted that Burch had a difficult year and failed to follow his treatment plan, resulting in his return to stage four. DesLauriers concluded that Burch remained a sexually violent predator who suffered from a mental abnormality making him likely to engage in further acts of sexual violence, and his mental abnormality had not changed to such an extent that it would be safe to place him in transitional release.

"Peterson's report was also submitted to the district court. Peterson noted that Burch had been sexually abused as a child and that Burch now understood why he had developed a sexual disorder. Peterson suggested that Burch's up and down progress was partially attributable to a treatment impasse as opposed to a resistance to treatment. Peterson concluded that Burch was unlikely to engage in further acts of sexual violence. However, Peterson's report failed to expressly recommend that it would be safe to place Peterson in transitional release." *In re Care & Treatment of Burch*, No. 102,468, 2010 WL 3324271, at °1-2 (Kan. App. 2010) (unpublished opinion).

Following a hearing in April 2008, the district court denied Burch's November 2005 petition for discharge or transitional release. The Court of Appeals affirmed the district court's decision, and this court granted Burch's petition for review.

## ANALYSIS

Before considering the merits of this appeal, we find it helpful to first describe the unique statutory process at issue here.

### *Statutory background*

The legislature enacted the SVPA to provide for long-term control, care, and treatment of sexually violent predators, as needed, as well as the public's protection. K.S.A. 59-29a01. Under the SVPA, once an individual is deemed a sexually violent predator, the person "shall be committed to the custody of the secretary of social and rehabilitation services for control, care and treatment until such time as the person's mental abnormality or personality disorder has so changed that the person is safe to be at large." K.S.A. 2011 Supp. 59-29a07(a).

As part of that commitment, the detainee receives treatment in a seven-phase program. See *In re Care & Treatment of Twilleger,*

46 Kan. App. 2d 302, 308-09, 263 P.3d 199 (2011) (discussing the program phases). In *Johnson v. State*, 289 Kan. 642, 646-47, 215 P.3d 575 (2009), we summarized the SVPA treatment program:

"The first four phases comprise the intensive inpatient treatment portion of the program. . . .

"Before a resident can move to the final three phases of the program—the transition phases—the resident must appear before a transition panel. The panel may either accept or reject the recommendations of the treating staff. Once it is determined by the transition panel that the resident is ready to enter the phases of transition treatment, the resident enters Phase 5 where he or she is escorted at all times and introduced to a graduated series of experiences on the grounds of Osawatomie State Hospital. From there, in Phases 6 and 7, the resident gradually becomes more independent by living in a cottage house on the grounds of Osawatomie, obtaining a job, attending outpatient therapy, and gaining conditional release for a minimum of 5 years."

The final step of the program, phase seven, is transitional release. In this phase, the committed person remains in SRS custody but lives independently or in a halfway house under State supervision. See K.S.A. 2011 Supp. 59-29a02(i); *In re Twilleger*, 46 Kan. App. 2d at 308.

Under K.S.A. 2011 Supp. 59-29a08(a), the State has several obligations to anyone committed under the SVPA, including (1) to conduct an annual examination of the person's mental condition; (2) to provide an annual written notice of the person's right to petition the court for release over the Secretary's objection, which shall contain a waiver of rights; and (3) to forward the annual report, as well as the annual notice and waiver form, to the court that committed the person. The committed individual also has rights under this section, including (1) the right to retain or, if indigent, to have appointed a qualified professional person to examine such person; and (2) to have such expert or professional person have access to all records concerning the person.

Once these obligations are met, K.S.A. 2011 Supp. 59-29a08(a) further provides that the court that committed the person must conduct an annual review of the status of the committed person's mental condition. At this hearing, the committed person has the right to attorney representation but the person is not entitled to be present at the hearing.

Although the hearing provided under K.S.A. 2011 Supp. 59-29a08(a) is not an evidentiary hearing, subsections (c)(1) and (c)(2) outline two scenarios that warrant a further evidentiary hearing—one mandatory, the other discretionary. First, under 59-29a08(c)(1), if at the annual review hearing the court determines "probable cause exists to believe that the person's mental abnormality or personality disorder has so changed that the person is safe to be placed in transitional release, then the court *shall* set a hearing on the issue." (Emphasis added.) K.S.A. 2011 Supp. 59-29a08(c)(1).

In contrast, under 59-29a08(c)(2), the court *may* order a hearing if:

"(A) There is current evidence from an expert or professional person that an identified physiological change to the committed person, such as paralysis, stroke or dementia, that renders the committed person unable to commit a sexually violent offense and this change is permanent; *and* (B) the evidence presents a change in condition since the person's last hearing." (Emphasis added.) K.S.A. 2011 Supp. 59-29a08(c)(2).

If the court finds under either 59-29a08(c)(1) or (2) that the committed individual is entitled to a hearing, then the individual is granted an evidentiary hearing as described in K.S.A. 2011 Supp. 59-29a08(c)(3). "At either hearing, the committed person shall be entitled to be present and entitled to the benefit of all constitutional protections that were afforded the person at the initial commitment proceeding." K.S.A. 2011 Supp. 59-29a08(c)(3). Further, at that hearing the State, represented by the attorney general, has the right to a jury trial and to have the committed person evaluated by the State's chosen experts. Similarly, the committed person has the right to have his or her own experts evaluate the person or, if indigent, to have an expert appointed. Finally, the statute specifically provides that the burden of proof at this evidentiary hearing—regardless if it is warranted under either subsection (c)(1) or (2)—"shall be upon the state to prove beyond a reasonable doubt that the committed person's mental abnormality or personality disorder remains such that the person is not safe to be placed in transitional release and if transitionally released is likely to engage in acts of sexual violence." K.S.A. 2011 Supp. 59-29a08(c)(3).

Here, because Burch sought transitional release under 59-29a08(c)(1), the issue for the court at the annual review hearing was whether probable cause existed to believe Burch's mental abnormality or personality disorder had so changed that he was safe to be placed in transitional release. Notably, even if the court had found such probable cause, Burch would not necessarily have been discharged or transitionally released. Instead, he would have been provided an evidentiary hearing under K.S.A. 2011 Supp. 59-29a08(c)(3).

Burch argues the district court erred in finding a lack of probable cause to believe his mental abnormality or personality disorder had so changed that he was safe to be placed in transitional release and the Court of Appeals panel erred in affirming that determination.

*The district court properly found a lack of probable cause to believe Burch's mental abnormality had changed to the extent that he was safe to be placed in transitional release.*

Before considering the merits of Burch's appeal, we must preliminarily determine (1) the standard of review to be applied to a district court's finding of no probable cause under K.S.A. 2011 Supp. 59-29a08(c)(1), and (2) which party bears the burden of proof to show probable cause at that hearing.

*The panel properly concluded that a district court's probable cause determination under K.S.A. 2011 Supp. 59-29a08(c)(1) is subject to de novo review.*

The Court of Appeals panel noted the absence of any caselaw determining the standard of review to be applied in reviewing "a district court's denial of a full evidentiary hearing pursuant to an annual review petition under K.S.A. 2009 Supp. 59-29a08." *In re Burch,* 2010 WL 3324271, at *3. The panel, however, concluded that a de novo standard of review applied. 2010 WL 3324271, at *3. Both parties appear to agree with that conclusion.

As the panel noted, the review of the probable cause determination under 59-29a08(c)(1) can be analogized to a K.S.A. 60-1507 proceeding in which a prisoner challenges his or her sentence. When the district court summarily dismisses a movant's 60-1507

motion and thus denies the movant an evidentiary hearing, this court applies a de novo standard of review. See *Bellamy v. State,* 285 Kan. 346, 354, 172 P.3d 10 (2007).

Additionally, after the panel issued its opinion in this case, another Court of Appeals panel considered this same issue in *In re Care & Treatment of Sipe,* 44 Kan. App. 2d 584, 239 P.3d 871 (2010). There, as here, the petitioner argued the district court erred in concluding at his annual review hearing under 59-29a08(c)(1) that he had not established probable cause to believe that his mental abnormality or personality disorder had so changed that he was safe to be placed in transitional release.

The *Sipe* panel concluded that the probable cause determination made in a SVPA proceeding is comparable to the probable cause determination made at the preliminary hearing stage in a criminal proceeding, which an appellate court also reviews de novo. Further, the panel reasoned that because the district court's probable cause determination at an annual review hearing under 59-29a08(c)(1) is based on expert reports and arguments of counsel, an appellate court is in the same position as the district court to determine whether the evidence is sufficient to establish probable cause. *In re Sipe,* 44 Kan. App. 2d at 590-91; see also *In re Care & Treatment of Miles,* 47 Kan. App. 2d 429, 434-35, 276 P.3d 232 (2012) (adopting *Sipe* panel's reasoning regarding de novo review of probable cause determination under SVPA); *In re Twilleger,* 46 Kan. App. 2d at 312 (same). Thus, the *Sipe* panel applied a de novo standard of review to its review of the district court's probable cause determination under 59-29a08(c)(1).

We agree with the analysis of the Court of Appeals panel in this case as well as in *Sipe,* and therefore we will apply a de novo standard of review to the district court's probable cause determination under K.S.A. 2011 Supp. 59-29a08(c)(1).

*In petitioning for transitional release, Burch bore the burden to show probable cause that his mental abnormality had changed to the extent that he was safe to be placed in transitional release.*

K.S.A. 2011 Supp. 59-29a08(c)(1) does not explain who bears the burden of proof when the district court considers a committed

person's petition for discharge or transitional release at the annual review hearing, and the Court of Appeals did not consider which party bore the burden of proof. Instead, it simply concluded: "Considering the fact that the State's four expert reports each specifically concluded that it would not be safe to place Burch in transitional release and Peterson's report contained no explicit recommendation that it would be safe to do so," the district court did not err in finding insufficient probable cause to grant Burch a full evidentiary review. *In re Burch*, 2010 WL 3324271, at *4.

However, in a Rule 6.09(b) (2011 Kan. Ct. R. Annot. 49) letter to this Court, Burch points out that the Court of Appeals panel in *Sipe* concluded the burden of proof at a 59-29a08 annual review hearing lies with the person seeking transitional release. Burch contends the district court and the panel erred in this case by failing to take the burden of proof into account in reviewing the evidence. He specifically suggests that as the person seeking transitional release, the burden of proof should be on him, and the court was thus required to view the evidence in a light most favorable to him. We agree.

As the *Sipe* panel pointed out, in a criminal proceeding the State bears the burden to prove it has probable cause to prosecute and, in considering the evidence, the district court reviews the evidence in the light most favorable to the State. 44 Kan. App. 2d at 592; see *State v. Berg*, 270 Kan. 237, 238, 13 P.3d 914 (2000) (noting that a trial court must draw inferences favorable to the prosecution from the evidence presented at a preliminary hearing); *State v. Bell*, 268 Kan. 764, 765, 1 P.3d 325 (2000) (noting that a preliminary hearing judge faced with conflicting testimony "must accept the version of the testimony which is most favorable to the State"). Further, when the State appeals from a district court's dismissal of a criminal prosecution for lack of probable cause, an appellate court reviews the evidence de novo, applying the same standards as did the district court. See *State v. Fredrick*, 292 Kan. 169, 171, 251 P.3d 48 (2011); *Berg*, 270 Kan. at 238.

Similarly, in an SVPA proceeding, the State initially must prove probable cause that the respondent is a sexually violent predator. See K.S.A. 59-29a05 (discussing initial probable cause determina-

tion under SVPA). And we have previously found the initial probable cause determination under the SVPA to be comparable to the probable cause determination in a criminal proceeding. *In re Care & Treatment of Hay*, 263 Kan. 822, 834, 953 P.2d 666 (1998).

But Burch has already been committed as a sexually violent predator and now seeks a finding from the district court that his mental abnormality or personality disorder has changed to the extent that he should be placed in transitional release. Because Burch seeks the affirmative of the issue—*i.e.*, that the court find probable cause—it is logical to require him to bear the burden to prove his petition. See, *e.g.*, *In re K.E.*, 294 Kan. 17, 23, 272 P.3d 28 (2012) (noting that a movant generally bears the burden of proof on a motion); *Wooderson v. Ortho Pharmaceutical Corp.*, 235 Kan. 387, 412, 681 P.2d 1038 (1984) (citing "the general rule that the burden of proof is upon the party asserting the affirmative of an issue").

Again, we agree with the *Sipe* panel which reasoned that "because a sexually violent predator bears the burden to establish probable cause at an annual review hearing, the district court must consider the evidence in the light most favorable to the committed person and resolve all conflicting evidence in that person's favor." *In re Sipe*, 44 Kan. App. 2d at 592. See also *Berg*, 270 Kan. at 238; *Bell*, 268 Kan. at 764-65.

*Burch failed to show probable cause that his mental abnormality or personality disorder had changed to the extent that he was safe to be placed in transitional release.*

Having determined that our standard of review is de novo and that Burch bore the burden to prove at his annual review hearing that probable cause existed to believe that his mental abnormality had so changed that he was safe to be placed in transitional release, we next consider the merits of Burch's appeal.

The district court reviewed three reports—the 2007 State report, the 2008 State report, and Dr. Peterson's report. Dr. Peterson's report concluded, in part, that "Burch has a relevant mental disorder (mental abnormality) over which he must remain vigilant so as not to reoffend," that Burch had a reduced likelihood of reoffending based on his new understanding of his own history of

being sexually abused, and that Burch's "new understanding means he has become so changed that he is unlikely to engage in acts of sexual violence."

The State's 2007 report generally stated that Burch had progressed through the program and had moved to phase five of the seven-phase program. The State's 2008 report, however, noted Burch had withdrawn from some of his therapy and, as a result, he had been returned to phase four of the program. And in contrast to Dr. Peterson's report, each of the two State reports concluded Burch remained a sexually violent predator who suffered from a mental abnormality, making him likely to engage in further acts of sexual violence.

In finding Burch failed to establish probable cause, the Court of Appeals panel emphasized that Dr. Peterson's report did not explicitly recommend that Burch was safe to be placed in transitional release. *In re Burch*, 2010 WL 3324271, at *4. Instead, Dr. Peterson's report concluded Burch had recently reached a "new understanding" of the relationship between his childhood sexual abuse and his adult sex crimes. Because of this new understanding, the report concluded Burch had "become so changed that he is unlikely to engage in acts of sexual violence."

But contrary to the panel's implication, a finding of probable cause does not necessarily require that the petitioner proffer a recommendation containing the exact words used by the statute. Instead, in order to establish probable cause, Burch was required to show that when viewed in the light most favorable to him, the facts presented at the hearing were sufficient to cause a person of ordinary prudence and action to conscientiously entertain a reasonable belief that Burch's mental abnormality or personality disorder had so changed that he was safe to be placed in transitional release. See *In re Sipe*, 44 Kan. App. 2d at 592-93.

Nevertheless, even viewing the evidence under this standard, we agree with the panel's conclusion that the evidence was insufficient to show probable cause with respect to *both* of the statutory requirements. Specifically, our examination of Peterson's report reveals that it fails to establish probable cause that (1) Burch's mental abnormality or personality disorder had changed; and (2) it

had changed to such a degree that he was safe to be placed in transitional release.

Peterson's report concluded that Burch's actions were consistent with the clinical definition of pedophilia, although he opined that his actions "are more consistent with Paraphilia NOS [not otherwise specified]." In addition, Peterson diagnosed Burch with polysubstance dependence in "Sustained Full Remission"; "Personality Disorder NOS . . . with Antisocial, Borderline, and Dependent features"; and a "developmental Reading Disorder."

In the final section of his report, entitled Relevant Mental Disorder, Peterson concludes that "Burch has a relevant mental disorder (mental abnormality) over which he must remain vigilant so as not to reoffend." He also suggests that Burch's understanding of the contributions of his childhood sexual abuse "reduces the likelihood that he will reoffend." Finally, he suggests that "[e]ven in view of [Burch's] obstreperous style, that new understanding means *he has become so changed that he is unlikely to engage in acts of sexual violence."* (Emphasis added.)

While Burch would like this court to equate Peterson's opinion that he is unlikely to engage in acts of sexual violence with an opinion that he is "safe to be placed in transitional release," we simply cannot do so in light of significant omissions in Peterson's opinion. Specifically, Peterson's report fails to specify if Peterson's diagnosis of pedophilia or paraphilia or any other "mental abnormality or personality disorder" has changed such that Burch is safe to be placed in transitional release. See K.S.A. 2011 Supp. 59-29a08(c)(3). Instead, Peterson simply concludes *"he has become so changed."* (Emphasis added.)

We find Peterson's failure to mention any change in Burch's primary diagnosis significant, particularly when contrasted with evidence presented in other cases. For instance, in *Miles* the Court of Appeals concluded there was probable cause for a transitional release hearing because two expert reports stated that Miles no longer met the definition of a pedophile. *In re Miles*, 47 Kan. App. 2d at 440-41. And in *Sipe*, the report stated that the petitioner had "no 'significant psychological disorder' " and included an explicit recommendation for transitional release. *In re Sipe*, 44 Kan. App.

2d at 594. Unlike the expert reports in *Miles* and *Sipe*, Peterson's report concludes that Burch still suffers from a psychological disorder.

Moreover, Peterson's report not only fails to indicate Burch is "safe" to be placed in transitional release, the remainder of the report seems to steer away from such a conclusion. For instance, Peterson opines that Burch must "remain vigilant so as not to reoffend" and that Burch "does not appear *currently* predisposed to commit acts of sexual violence." (Emphasis added.) Additionally, Peterson's report recognizes that Burch had reached an impasse in treatment.

Burch points out that Peterson's report also cautioned that a treatment impasse "is not the same as resisting treatment." Nevertheless, Burch fails to recognize that Peterson confirmed this treatment impasse could "lengthen [Burch's] lack of eligibility to Transition House."

Under these circumstances, we must conclude that Peterson's report, even when viewed in a light most favorable to Burch, would not cause a person of ordinary prudence and action to conscientiously entertain a reasonable belief that Burch's mental abnormality or personality disorder had so changed that he was safe to be placed in transitional release. Therefore, as the Court of Appeals concluded, the district court did not err in concluding Burch was not entitled to an evidentiary hearing under K.S.A. 2011 Supp. 59-29a08(c)(1).

Finally, we note that in his pro se petition for review, Burch argues the district court should have granted him an evidentiary hearing under K.S.A. 2011 Supp. 59-29a08(c)(2)(B). But it appears Burch misreads that section to permit the court to conduct an evidentiary hearing if there is any evidence that "presents a change in condition since the person's last hearing." See K.S.A. 2011 Supp. 59-29a08(c)(2)(B). As discussed above, a thorough reading of the statute reveals that K.S.A. 2011 Supp. 59-29a08(c)(1) *requires* the court to conduct an evidentiary hearing if the requirements of that subsection are met. In contrast, K.S.A. 2011 Supp. 59-29a08(c)(2) *permits* the district court to conduct an evidentiary hearing if *two* conditions are met: "(A) There is current evidence from an expert

or professional person that an identified physiological change to the committed person . . . renders the committed person unable to commit a sexually violent offense . . . ; *and* (B) the evidence presents a change in condition since the person's last hearing." (Emphasis added.)

It appears that Burch interprets K.S.A. 2011 Supp. 59-29a08(c)(2)(B) as a separate, stand-alone provision permitting the district court to order an evidentiary hearing when there is *any* change in condition since the person's last hearing. But because Burch fails to suggest that the condition set forth in (c)(2)(A) applies, we conclude the district court had no discretion to grant a hearing under K.S.A. 2011 Supp. 59-29a08(c)(2).

For all of these reasons, we affirm the Court of Appeals' decision affirming the district court's determination that Burch failed to show probable cause to believe his mental abnormality or personality disorder had so changed that he was safe to be placed in transitional release.

Affirmed.